## WAMBAUGH *against* GATES.

A title to real estate obtained at a sale upon a decree authorizing it, which is subsequently reversed by an appellate court, is subverted by the reversal.

Where a decree in one suit directs the sale of lands and a particular disposition of the proceeds, the execution of which decree is restrained by injunction, and a decree in another suit brought in the nature of a cross bill directs the sale of the lands as well under the first as the second decree, and a sale is made by a master in whose hands only the second decree was placed, it will be deemed made on that decree only.

In such a case the fact that the solicitor of a party to the first suit, who was entitled to costs, to be first paid from the proceeds of the sale under the decree in the second action requested the master holding the decree not to postpone the sale, and his bidding the amount of his costs as a first bid, and a receipt of his moneys upon the sale, will not estop his client from asserting the invalidity of the sale, when the second decree is subsequently reversed.

J. B left by will to his son real estate, charged with the payment of legacies The legatees obtained a decree against the devisee for the sale of the land, to raise their legacies. The plaintiff, a creditor of J. B., who had obtained a judgment against his executors in a suit against the devisees and legatees, obtained a decree that the land should be sold, and the costs of the legatees in the former suit should be first paid, then his judgment, and afterwards the legacies. Under this decree a sale was made, he purchasing. The decree was subsequently reversed, upon appeal, and a sale made upon the first decree, and the land bid off by the solicitor for the legatees, who had received his costs from the first sale, and then conveyed to the defendant; *held*, that the defendant's title was good against the plaintiff.

This action was brought for the recovery of the possession of about 220 acres of land, situated in the town of Big Flats, in the county of Chemung, and was commenced by the service of summons and complaint, in July, 1848.

The defendant answered the complaint, denying that he unlawfully withheld the possession of the premises from the plaintiff, and also denying the plaintiff's title to, or ownership of the land, or that he was entitled to the rents and profits thereof, and claiming that the defendant had been and was the sole owner in fee of said land.

Jonathan Boyer, deceased, was the owner of the premises, and died seized in fee of the same, on the 11th ·of January, 1828. On the 6th of March, 1825, Boyer made his will, by which he gave his son Samuel this farm, subject to certain pecuniary legacies, of five hundred dollars each, which Samuel was to pay to his daughters Polly, Susannah, Mary and Catharine, as they should severally arrive at the age of twenty-one years, and appointed his sons Philip and Samuel executors of his will.

On the tenth of January, 1833, the plaintiff sued the executors upon a promissory note held by him, given by the testator, and recovered a judgment of $1510·32, and subsequently sold the premises upon execution issued upon said judgment, and became the purchaser of such premises at sheriff's sale, for the .sum of $1937, and subsequently took a sheriff's deed of the same.

In the year 1835 a bill was filed by the defendant and his wife, (she being one of the legatees above named,) and others claiming as legatees of Jonathan Boyer, in behalf of themselves and all others, the legatees claiming under such will, who should come in and contribute to the expenses of the suit, to compel the payment of the legacies and make them a lien and charge upon the land so devised to Samuel Boyer. This bill was filed against Samuel Boyer and Philip Boyer, the executors, and against Evan Poultney, Samuel Poultney and William McEllicott and the plaintiff.

On the 22d of September, 1838, a decree was made in favor of the complainants in that suit, that they were entitled to the legacies bequeathed to them respectively, and that the legacies were legal and equitable charges upon the real estate devised to Samuel Boyer. Reference was made to a master to ascertain the amount due to the complainants, and the decree directed that the premises should be sold under the directions of a master, and from the proceeds of the sale there should be paid, first, the complainants' costs and master's fees; second, the costs of

the guardians of the infant defendants, and third, the legacies, and the bill was dismissed as to the plaintiff in this suit, without prejudice and without costs.

The plaintiff, on the 13th day of December, 1838, filed a bill in the court of chancery, before the vice chancellor of the 6th circuit, against the complainants, in the bill above mentioned, for the purpose of making his judgment a lien upon the premises prior to the lien of the legatees, and on the 28th of April, 1842, obtained a decree directing a reference to a master to ascertain the amount due to the plaintiff upon said judgment, and the interest upon the same, and also the sum of $363·28, being the excess of his bid at the sheriff's sale beyond the amount of his judgment and the interest thereon, also the legacies mentioned in the former decree, and that the master should proceed to sell under the former decree and by virtue of the decree in said suit, the premises in question, and out of the proceeds of such sale to pay, in pursuance of said former decree, first, the costs of complainants' solicitor, as taxed, including a reasonable counsel fee and the master's fees on such reference; second, the costs of the guardian and solicitor of the infant defendants in said former decree, with interest; third, the costs of defendant's solicitor in the second suit; fourth, the complainant the amount of his judgment of $1510·32, and interest, and also said sum of $363·28, and interest, and his costs to be taxed, and the further payments out of the proceeds of sale to be made, agreeably to the former decree.

A sale of the premises was made on the 21st day of July, 1842, by a master in chancery, in Chemung county, under one or both of the decrees, and the premises bid off by the plaintiff for the sum of $3725. Out of the proceeds of which sale the master paid to John A. Collier the sum of $908·47, being the amount of complainants' costs in the first, and the costs of the guardian and solicitor for the infant defendants, and the costs of the defendants' solicitor in the second suit; $207·97 costs to the complainants' soli-

citor in the second suit, and retained $50 for his fees and disbursements upon such sale, and the residue of the proceeds of the sale, being $2558·66, he paid to the complainant Wambaugh to apply on the amount decreed to him in the second suit.

On the second day of August, 1845, the decree in favor of the plaintiff, against the defendant and others, was reversed in the court of chancery by the chancellor, and the bill of complaint dismissed as to the defendant Gates and others, legatees, with costs, and the costs of appeal to be taxed, but without prejudice to the rights of the parties in any future litigation. In the decree of reversal, the sale of the premises made by the sheriff upon the plaintiff's judgment against Samuel Boyer and Philip Boyer, was at the election of the plaintiff set aside, and it was provided that the judgment in the supreme court be in full force, as against Samuel Boyer, the surviving executor, notwithstanding the sale, and for an account against Samuel Boyer. From this decree the plaintiff appealed to the court for the correction of errors, and the decree was affirmed in the court of appeals on the 29th of November, 1847, with costs.

On the 18th of September, 1845, between the time of the reversal of the second decree by the chancellor and the affirmance of such decree of reversal by the court of appeals, the premises were sold by virtue of the first decree, under the direction of a master of the court of chancery, and bid off by John A. Collier, for the sum of two thousand dollars, and Collier subsequently conveyed the premises to the defendant, who was admitted to be in possession at the time of the commencement of this action.

The plaintiff, at the time of filing his bill of complaint against the defendant and others, obtained an injunction, directed to the defendants in that suit, restraining the sale of the premises under and by virtue of the first decree.

Judgment for the plaintiff was rendered in this action upon a trial at Chemung circuit, held by Mr. Justice MASON, in September, 1850, without a jury, and such judg-

ment was affirmed at a general term of the supreme court, in the sixth circuit, from which judgment the defendant appealed to this court.

*J. A. Collier* for appellant.

*B. D. Noxon* for respondent.

TAGGART, J.   The principal question which has been discussed and passed upon in deciding this case in the supreme court, as appears from the opinions of the learned justices, is whether the sale made in July, 1842, under the direction of a master of the court of chancery, was made by virtue of both decrees, or only by virtue of the decree in favor of the plaintiff.  Justices Seldon and Johnson who delivered opinions in the supreme court on the appeal to the general, term from the judgment first rendered in this action, arrived at the conclusion satisfactory to them, that the sale was under both decrees, as they viewed the evidence upon that trial, while Mr. Justice Mason arrived at the conclusion as satisfactorily to himself, from the evidence on that trial, that the sale was under the last decree.  And on the last trial, although he rendered judgment in accordance with the previous decisions at the general term, he says he is satisfied, after a careful examination of the evidence, and a second hearing in the case, that the sale of the master was not under the first decree, but under the second decree only.  It appears, too, from the opinion of Mr. Justice Selden, that, from the evidence upon the first trial, it appeared that the solicitor for the plaintiff placed copies of both decrees in the hands of the master who made the sale; but from the evidence of the master on the second trial it is clear that he does not know or remember whether he had a copy of the decree in the first suit in his hands at the time of the sale, or whether he then had only the decree in the second suit, but that he never had in his hands more than one copy of

the decree in the first suit. One copy of the decree in the first suit, it appears by the testimony of Mr.Collier, was sent to the master by him, after the reversal of the decree in the second suit. If this statement is correct, the master could not have had a copy of the decree in the first suit at the time of the sale. The master testified in this suit that he "sold according to the directions of the decree in his hands, which directed him to sell under both decrees."

Without inquiring whether technically the sale was by virtue of one or both decrees, I propose to examine a preliminary question, which, it seems to me, is important, if not decisive of this case, viz: Under and by virtue of what authority was the sale made by the master, in July, 1842? A decree was placed in his hands, containing the following directions: "That the said master proceed to sell, under the said former decree, and by virtue of this decree, the following premises, &c." Such decree contained his only authority for making the sale. The defendant Gates could not have directed a sale by virtue of the first decree at that time, for the reason that he was restrained by injunction from making such sale. The plaintiff had no control over the first decree, except such as was conferred on him by the second. The restraining power of the injunction had not been removed, except so far as it was expressly released by the second decree, which directed a sale under both decrees. Neither the plaintiff nor defendant nor any other person had any authority to sell under the first decree, except such as was expressly conferred by the second. The sale could not, then, have been made under the first decree, without some other order or authority. Such authority was given by the second. The learned justice erred when he said that "the complainants in the first suit had an undisputed power to sell under their decree, and that power had never been in any way impaired." They were restrained from selling until the further order of the court, authorizing them to make such sale. Such order had not been made. The order in the

second decree was special, limited to the objects specified therein; was antagonistical to the rights of the complainants, under the first decree; was to be executed at the instance and for the benefit of another party principally, and did not in any manner dissolve or modify the injunction, so as to enable the complainants in the first suit to make the sale. Such injunction was never, in fact, dissolved, or so modified as to authorize them to make a sale until the decree in the second suit was reversed by the chancellor, and the plaintiff's bill dismissed.

The sole authority, then, under and by virtue of which the sale was made was the second decree.

It is conceded that if the sale was made under the second decree alone, the reversal of the decree invalidates the sale. I go a little farther than this, and say if the sale was by the *authority* granted or conferred by the second decree alone, yet made in pursuance of such authority under both decrees, that the reversal of the second decree vacates or destroys the *authority*, and the sale falls with the *authority* under which it was made. It does not appear that the decree was partly reversed and partly affirmed, but it was wholly reversed, and all power and authority conferred upon the plaintiff to sell under either or both became dissolved, and every act by him in the execution of such power became void and ineffectual by the abrogation of the power. It becomes, therefore, unnecessary to decide whether the sale was or was not in fact under both decrees. It was not, however, made under the first decree except as a mere matter of form, in compliance with directions in the second decree.

It is claimed that the defendant and others who were complainants in the first suit, by their interference, compelled the plaintiff to sell, and they thereby adopted the sale; that they received nine hundred and eight dollars and fifty-seven cents of the proceeds of such sale, and are therefore estopped from denying that the sale was under both decrees. Mr. Collier wrote to the master and said,

Wambaugh *against* Gates.

"I have a right to sell under the first decree, and I therefore direct that there be no farther postponement, and that the premises be sold upon the day to which the sale is now adjourned;" and again, "The master is to sell under the two decrees; those are his authority."

There may be some force in this argument of the plaintiff, but it seems to me that the defendant can not now be charged with an act which transpired in relation to that decree, while it was in life, with the view of restraining a transaction which, without such act, would have been void. The decree was then in full force. No appeal from it had yet been brought. The plaintiff had advertised the premises for sale, in pursuance of his decree. The defendant had rights under that decree to protect, and took measures to protect them. One of the annoyances to which he was or might be subjected, was the repeated postponement of the sale, causing him unnecessary trouble and expense. To prevent such annoyance he interfered, as he had a right to do, and opposed any farther adjournment of the sale.

It is true that Mr. Collier said he had a right to sell under the first decree, and insisted that the premises be sold on the day, &c. In this he was under a mistake. He had no right to sell under the first decree, neither had he any right to insist that the sale should be made on the day, &c., or that it should be made at all. But not only he, but the defendant and the other complainants in the first decree had a right to insist that there should be no farther postponement, and that the plaintiff should either sell or discontinue his proceedings upon such sale. As to defendant's receiving and not paying back the $908·47, he stands in no worse light than the plaintiff, who (if his hypothesis that the sale is to be sustained as a sale under the first decree is correct,) has in his hands the balance of the proceeds of the sale, after deducting the sum of $908·47, paid to Collier, and $50 master's fees, amounting to $2766·43, which belongs to complainants in the first decree.

If the plaintiff is right in his position that the sale was

Sel, IV.—19,

under both decrees, and the title is in him by virtue of the first decree, he has in his hands $2766·43 which belongs of right to the legatees. On the other hand, if the defendant is right in his assumption that the sale is invalid in toto, he has in his hands $908·47 which belongs to the plaintiff.

But the plaintiff is too late with these objections, if they ever had any validity. If the defendant, by giving directions in reference to the sale, and receiving the money directed to be paid by the second decree, was estopped from impeaching the sale, he was estopped from appealing from the decree. The remedy of the plaintiff, if he had any, was by a motion to dismiss the appeal, but he can not urge these facts now, as a bar to the defendant's defence. The plaintiff can only recover upon the strength of his own title. He is bound to make out a title in himself to the land in question. The deed is invalid, and he can not support and sustain it by the acts of the defendant.

The judgment of the supreme court at the general and special terms must therefore be reversed, and a new trial ordered, with costs to abide the event.

JOHNSON, J. The judge before whom this cause was tried found, as matter of fact, that the decree of September 21, 1838, was not in the hands of the master when he made the sale upon the 18th July, 1842, and that such sale was made under the decree of April 28, 1842, and not under the first mentioned decree. This finding is both strictly in accordance with the evidence and conclusive upon us as to the question of fact. It is, however, contended that the sale did virtually, or by construction of law, take place under the decree of September 21, 1838, inasmuch as the decree of April 28, 1842, recites that decree, and directs the master to proceed and sell, both under it, and also by virtue of the decree of April 28, 1842. To this it is a complete answer, that so far as the sale could be regarded as having been made under the authority of the first decree, by virtue of the direction contained in the last de-

cree, the subsequent reversal of that decree is effectual to destroy the authority.

This brings us to the only question in the case: whether the plaintiff can have any advantage from the doctrine of *estoppel in pais*, so as to prevent the defendant from setting up the plaintiff's want of title. I am unable to see how any such right is to be extended to the plaintiff in this case. Collier's letter to the master in chancery, requiring him to proceed to sell under the decree in Wambaugh's suit, did not and could not control the action of the master in executing the decree. It may have influenced his mind to refuse a postponement of the sale on Wambaugh's application, but the granting or refusing to grant the application lay in his discretion. Nor is there, I think, any room to say that Collier's letter held out the idea that the sale, when made, was to be made under both decrees, except only so far as a sale under the second decree in law was equivalent to a sale under both. The fair construction of the letter is, "Go on and sell under the second decree, for if you should refuse I can compel a sale under the first decree." It rather negates than affirms that the sale is to be made under both decrees.

In regard to Collier's bidding at the sale, it is quite obvious that to bid was necessary for his own protection. He could not assume that the decree of the vice chancellor would be reversed, and could not therefore safely abstain from bidding.

Nor is there any thing in the fact that the money received by Collier upon the Wambaugh sale has not been refunded to Wambaugh. Under the sale on the 18th of September, 1845, Gates, through the agency of Collier, became the purchaser. At that time the chancellor having reversed the decree under which Wambaugh purchased, he was prosecuting his appeal to the court of appeals. Had that appeal been successful, Wambaugh's purchase would have been effectual, and there would have been no occasion to refund; at this time, therefore, Gates had done

every thing he could possibly do, by placing in the hands of Collier, who received the money from Wambaugh's purchase, the amount which he had so received. Gates' title must depend upon the facts, as they existed when he made the purchase, and looking to that time, there was no obligation on any one to repay Wambaugh. The parties stood upon their respective rights, Wambaugh relying upon his decree, and Gates upon the first decree; and we do not see any ground upon which their legal rights are to be interfered with. The judgment must be reversed.

Judgment reversed, and new trial ordered.